(No. 4435- 

OMER H. HESTER, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed January 8, 1952.*

BRADBURY AND BRADBURY, Attorneys for Claimant.

IVAN A. ELLIOTT, Attorney General; CHARLES H. EVANS, Assistant Attorney General, for Respondent.

LANSDEN, J.

Claimant, Omer H. Hester, seeks to recover from respondent under the Workmen's Compensation Act for injuries sustained in an accident, which arose out of and in the course of his employment as a guard at the Pontiac Branch of the Illinois State Penitentiary, operated by the Department of Public Safety.

No jurisdictional questions have been raised, or can be involved.

On August 1, 1949, claimant, who was assigned to security duties, was making the rounds, punching the clock at the various stations, when his attention was attracted by a light in the elevator shaft of the sheet metal building. Thinking that the light might come from a fire, he investigated the source of the light, and found it to be a reflection of the sun's rays through a slit in pieces of sheet metal. As he turned away, he slipped and grabbed the elevator gate, which gave way, and claimant fell 4½ feet into the bottom of the elevator shaft, and sustained a serious fracture of the neck of his right femur.

After claimant finally dragged himself out of the shaft, he crawled along the floor, and finally his cries were heard by one of his superiors.

He was thereupon taken to the prison hospital, and the next day, since he was a veteran of World War I, he was transferred to the Veterans Administration Hospital, Dwight, Illinois, where he remained, except for two days, until August 22, 1950. He returned to said hospital on March 22, 1951, remaining until June 25, 1951.

The record discloses that claimant's fracture was first reduced by an operation, and the fragments were fixed with a pin through the neck of the femur, and a plate extending down the shaft was held in place by several screws.

This operation was not successful since no union resulted, and muscle pull sheared off some of the plate screws.

On claimant's re-entry into said hospital, the metallic fixation material was removed with the exception of one screw, which could not be taken out. A bone graft was made, and multiple steel pins were driven through the trochantéric area up through the neck and into the head of the femur.

Claimant's fragmented, intra-capsular fracture has never healed. Either the fragments will be absorbed, or a degenerative arthritis will destroy the function of the hip joint.

A fusion operation might be performed, which would relieve claimant of some pain, but would result in permanent immobilization of the hip joint.

At the hearing before Commissioner Wise on October 1, 1951, claimant was unable to walk, and could stand only with the aid of crutches.

Prior to his employment by respondent, claimant was a laborer and farmer, and it appears without question that claimant is totally and permanently disabled

from pursuing any gainful occupation available to him by reason of his education, experience and training. He can no longer perform manual labor, and a housekeeper is required to furnish claimant with his minimum daily needs.

On the date of his accident, claimant was 53 years of age, divorced, and had no children dependent upon him for support. He began working for respondent on July 1, 1949, and his rate of pay was $237.00 per month. His rate of compensation is, therefore, $22.50 per week.

From the date of his accident through December 31, 1950, claimant was paid his full salary of $237.00 per month. The payments for the seventeen months, when claimant did not and could not perform any services for respondent, amounted to $4,029.00. Claimant has thus been greatly overpaid, and the award hereinafter entered in his favor must take this into account.

Priscilla M. Bradbury, Robinson, Illinois, was employed to take and transcribe the testimony at the hearing before Commissioner Wise. Her charges amount to $41.00, the same being reasonable and customary, and an award is entered in her favor for $41.00.

Because respondent did not furnish the medical treatment required of it under the Workmen's Compensation Act, claimant, in addition to the hospitalization and surgical services furnished by the Veterans Administration, consulted with, and was treated by Dr. Raymond B. Murphy, Palestine, Illinois. A bill for $330.00 has been submitted by Dr. Murphy, but at the hearing the doctor testified that his charges included an amount for his testimony at the hearing, and for his time in making up reports. Respondent is liable only for those professional services, which tend to cure and relieve claimant of the effects of his accident. Therefore,

claimant and respondent each owe Dr. Murphy something. Although Dr. Murphy's bill is not itemized, we can hold respondent liable for X-Rays, four or five treatments and consultation services, and we find the reasonable value of these services to be $130.00. Claimant will, therefore, have to pay Dr. Murphy $200.00 from his own funds.

An award is entered in favor of claimant, Omer H. Hester, under Section 8 (a) of the Workmen's Compensation Act, for medical services for the use of Dr. Raymond B. Murphy in the sum of $130.00, payable forthwith.

An award is entered in favor of claimant, Omer H. Hester, under Section 8 (f) of the Workmen's Compensation Act, for total permanent disability, plus a pension for life; or the sum of $6,000.00, plus an annual pension of $480.00, payable monthly in the sum of $40.00 after the payments of $6,000.00 shall have been made.

However, since claimant has been so greatly overpaid, having already received $4,029.00, which amounts to 179 weeks at $22.50 per week, and one week at $1.50, no payment can be made to claimant under the award herein until one week after January 5, 1953, by which date 179 weeks of compensation will have accrued. At that time claimant should receive only the amount of $21.00, being one week's compensation less $1.50 already paid to him in the said amount of $4,029.00.

The remainder of the award is payable as follows:

Commencing on January 19, 1953, claimant shall receive the sum of $22.50 per week for 86 weeks, plus one final payment of $15.00; and commencing one month after the date of said final payment of the sum of $6,000.00, claimant shall receive $40.00 each month for life.

Jurisdiction of this case is specifically reserved for the entry of such further orders as may from time to

time be necessary. *Penwell* vs. *State*, 19 C.C.R. 176; *Penwell* vs. *State*, 18 C.C.R. 8; *Penwell* vs. *State*, 18 C.C.R. 183.

These awards are subject to the approval of the Governor. Ill. Rev. Stat., 1951, Chap. 127, Sec. 180.